Good morning, Your Honors. May it please the Court, I'm Jonathan Weiss here on behalf of Appellant Arnold Rosenfeld and the class. The parties agreed to arbitration to be conducted and subject to enforcement under the California Arbitration Act. The terms conducted and enforcement parallel the Act's chapter names. Chapter 2 is Enforcement of Arbitration Agreements. Chapter 3 is Conduct of Arbitration Proceedings. And Chapter 4 is Enforcement of the Award. I'd like to take two minutes to describe how the enforcement provisions, that's chapters 2 and 4, require a vacater. Chapter 2, sections 1281.85 and 1281.9, require disclosures of matters creating a doubt about the arbitrator's ability to remain impartial. This arbitrator made the following Chapter 2 declaration the day that Mr. Grossman entered the case. Quote, I've made a reasonable effort to inform myself of any matters that could cause a person aware of the facts to reasonably entertain a doubt that as the proposed arbitrator I would be able to be impartial. In addition, I have disclosed all such matters to the parties. Signed, Richard C. Neal. That's ER 244. But the professional relationship between the arbitrator's wife and Mr. Grossman, a relationship that by legislative decree creates a doubt about the arbitrator's ability to remain impartial, was not disclosed. And because the relationship was not disclosed, Chapter 4... It was not known to your client? Of course not. Or we would have asked Mr. Grossman to leave the room. When did you or your client learn of the relationship of which you now complain? I want to answer the question directly and then explain. It's not in the record.  How long before the decision by the arbitrator? I don't... I'm afraid I don't remember how long it was between there. It may have been a year or two before we got to trial. So you waited until you learned the decision and then you objected? Absolutely. We had to. Why? Well, two years... I do know this time. Two years to get the case certified after it was remanded. Two years we spent convincing this judge that the case should be remanded. I'm sorry, should be arbitrated. And that's a pretty big thing to do in a case. We had Akin Gump on the other side, you know, competent counsel. There's a hearing on the next proceedings and Mr. Grossman came in. And Mr. Grossman, unbeknownst to us, had a relationship, professional relationship. We don't know about the personal relationship. And months... Then things changed, the case proceeds. And then months later we find out about this. So what are we to do? Start over? Have a collateral matter about whether Mr. Grossman could come in? They brought in someone to... Yeah, but the point is obvious. You know about it, you say nothing about it, you lose, and then you raise it. And the point is obvious and it's an easy question to anticipate. Of course, anticipate it. What were we to do? Start over? We're not the ones who created this. Yep, yep, yep, yep, yep. Yes, yes, start over. You want me to go on? Yes, no, I mean, why... If you think this is a kind of conflict that is qualifying, why don't you have an obligation to raise it the first minute you know about it? Not that anybody spent another minute, another dollar of attorney's fees, going down further down this track, which you consider to be a train wreck. I don't understand how you can... Well, we didn't consider it to be a train wreck. So we had the case certified. You thought, you were aware of this relationship, and you thought that this was a disqualifying conflict. So at that point, you... I don't see where you had a choice but to raise it and stop any further proceedings under this, what you claim is a... under this arbitrator who you believe is disqualified from participating. How is it that you can do anything else but raise it, if that's what you thought? There would have been no problem had things proceeded as they had before, which is that we would have proceeded and won. In other words, we could wait... This is more like, and I'd be frankly more comfortable if Grummel was here saying, you know, we lost, and we want a vacater because it wasn't disclosed. They could make the argument under the letter of the statute, saying that Mr. Grossman's relationship was not disclosed. That's been done in some of the cases they cited. I think Leninan was a similar case, where they said where a party knew the relationship... I don't know why you're talking about this. What are you saying? The question is, how do you, if you believe you are now aware of a disqualifying conflict, how it is that you can continue on with letting the parties rack up attorney's fees and continue with the litigation and hope to win and say nothing at all and lie and wait and raise this issue until after you lose? Grummel knew. The judge knew. We're the only ones who didn't know. But you found out. Yes, we did. You found out, and at that point you could say, look, we knew. We just found out, and we want to be compensated for the months and months that we've now spent wasting time, or whatever you wanted to get by way of a remedy. But how is it that when you find out about it, but you now claim it's a disqualifying conflict, you say nothing at all, and you wait in case you maybe win, and then if not, you have a get-out-of-jail-free card that nobody knows about. How is that? Two things. It's not that nobody knew about it. Grummel knew about it. The judge knew about it. Grummel had to assume that we could find out or might find out. But you keep saying it's a disqualifying fact. Well, that's what you say. No, that's what you say. I'm far from saying it's disqualifying. In the statute at the beginning, when things are disclosed, it is grounds for disqualification. It is not necessarily automatic grounds for disqualification. It's different time elements for when things happen under the Arbitration Act. Before an award comes, after an award comes, when there's a preliminary award. At the point that we found out, it was not at all certain, not at all certain, that we could have disqualified. Then you raise it. If you don't succeed, then you have an objection that you can then raise in court, but at least you raised it at a time when you didn't know the outcome of the litigation and you at least gave everybody a chance to walk away from this and say, okay, we're not going to spend any more money on this because this might be an issue. How you can lie in wait like that and wait to lose and then pull this... What we were doing is waiting to win, to be clear. The law had been interpreted... Everybody waits to win. Of course. But if I may... The universities are unusual that way, do you? No. The arbitration laws are set up so that it's not just so we can know that the arbitrator may be biased or not biased. We haven't made that allegation. We don't need to make that allegation. The disclosure laws are set up to preclude this thing from blowing up. We had certified the case. What should have happened by law is that the arbitrator should have said, I know that my wife worked with that man, and we could have said, please ask that man to leave the room because we have a case that's on track, working the way it should under our rules, under the arbitration rules, and we wouldn't be here. It would have remained a level playing field. I do want to reserve time for... Well, you could have asked for him to leave the room when you found out, right? I'm sorry. You could have asked for Mr. Grossman to leave the room when you found out. We could have, after the case had been narrowed from a national class to a state class. We could have. But I must say... So that happened, your finding out, happened after the class was narrowed? Oh, absolutely. It happened months after he walked in the room. But what we did not know, and still do not know, is the extent of the relationship. It opened this whole collateral area that in a case that had already gone on for, I think at that point, for six years, was not something that we chose to do. It was a difficult decision. I do want to reserve the 50 seconds I have left if I may. Okay. Thank you. Good morning. My name is Rex Seinke on behalf of GRUMA. I think the Court put their finger exactly on what we think the problem here is. That is, a party cannot lie in wait when they know they must either act or they must acquiesce. But they can't lie in wait and see what the outcome is going to be and whether they're going to win. And after they lose, say, oh, now we think this is horrible, terrible, and we get to start all over again after we lost. Mr. Heineke, regardless of the lying in the weeds problem, which is an obvious problem in this case, is there not an argument that California law mandates vacation when the supplemental disclosure does not disclose something that should have been disclosed had it been known in the initial disclosure? Or had it been a conflict at the time of the initial disclosure, shouldn't it have been disclosed in a supplemental disclosure, and therefore the California law, which seems to mandate vacation, if it was not disclosed in the initial disclosure, why wouldn't it be the same issue for a supplemental disclosure? Well, I think, Your Honor, the reason it's different for supplemental disclosure is this. With a supplemental disclosure, the parties are much more invested in the process. And the rules that California has adopted, and if you look at the Judicial Council ethics standards, which cover supplemental disclosures, are much less demanding than the rules of the initial disclosure. California has chosen to say when the initial disclosure has to be made, very broad disclosure is required. On supplemental disclosures, those are much narrower. Well, I would agree on the Ethics Council aspect of it, but the statute doesn't say that, does it? The statute just requires the disclosure. Well, if you look at the language of the statute, the statute talks about an initial disclosure. And then it goes on to say, and the Judicial Council can promulgate additional rules. What I'm referring to is the California Code of Civil Procedure, Section 1281.9b, which says, subject only to the disclosure requirements of law, the proposed neutral arbitrators shall disclose all matters required to be disclosed pursuant to the section to all parties in writing, and here's the key language, within 10 days of service of notice of the nomination. So the statute applies when the arbitrator is initially appointed. But the supplemental disclosure that the arbitrator made in this case stated that it was made pursuant to the statute. Even though the statute only applies to initial disclosures, the supplemental disclosure indicated that it was made pursuant to the statute, correct? Yes, Your Honor, but here's the thing. It also says that the supplemental disclosures are made pursuant to the Judicial Council rules. And the Judicial Council rules, or I should say the power of the Judicial Council and its obligation to promulgate those rules are in the statute. There's nothing wrong with saying in his supplementary disclosure, I'm doing it pursuant to the statute and I'm doing it pursuant to the Judicial Council rules, because that's what he's doing. The Judicial Council rules are pursuant to the statute. And indeed, if you look at the supplemental disclosure, you'll see there are a whole bunch of boxes, and it says yes or no, yes or no, and after each of those, it says what the Judicial Council rule is that's the basis for that particular required disclosure. So I don't think that the arbitrator here did anything other than exactly what he was supposed to do. On the supplemental disclosures, he followed the Judicial Council rules which control those disclosures and complied with those disclosures which are not as broad as the initial disclosure. But he would have had to disclose this on the initial disclosure, correct? Your Honor, I don't think so, because that gets you into this, the question of the language about a professional relationship and what that is and what you need to disclose. A case we cited in our brief on page 36, and I'm probably mispronouncing it, but it's spelled G-U-S-E-I-N-O-V versus Burns. The California Court of Appeal there said squarely that the professional relationship needs to be a significant relationship. That is, it can't be any professional relationship whatsoever. That would mean if I was a summer associate at one stage in a law firm, that would mean my spouse as an arbitrator would have to disclose that 30-some years ago for one summer I worked for a law firm. That would make this rule absolutely unworkable and unreasonable. You've got to have some significant relationship. Is this a professional relationship in any event? Well, I think that's an arguable question here. That's why I asked it. I was hoping for an answer rather than a pat on the back. What is your answer? My answer is it needs to be a relationship. No, no, I'm not asking you what it needs to be. Did you hear my question? Yes, Your Honor. Okay, why don't you answer the question I asked? Your Honor, I don't think it's a professional relationship, but I think the way you decide that is you look at the purpose of the disclosure. And why do you think it's not a professional relationship? Because it's too long ago. It was eight years beforehand. Wait a minute, wait a minute. Your relationship to the firm that you were a summer clerk for is not a professional relationship? Your Honor, I think it has to be interpreted in terms of whether it's a significant. I didn't ask significant. If you're saying only a professional. Did you hear my question, Mr. Heineken? Yes, Your Honor. If you're saying only a professional relationship, certainly my being a summer associate was a professional relationship. Okay, so is this a professional relationship? Yes. How? Because the person involved, the arbitrator's wife, was a partner with Paul Grossman. Well, she had a professional relationship. Does the arbitrator have a professional relationship? No, not with Mr. Grossman. You're not listening to the question. Not at all, Your Honor. A fabled appellate litigator like you. But, Your Honor, I think what the statute does. The question I'm asking is, is this relationship, whatever the relationship is between Dick Neal and Paul Grossman, is that a professional relationship? No. Wow. It took forever to get that out of you. But, Your Honor, I. . . You must be a lawyer. Your Honor, I think. . . So your position is it's not a professional relationship? Not the relationship between the arbitrator and Mr. Grossman, no. And that's the relationship that counts, right? Unfortunately, I think this is where we're having this little maybe disconnect. I think that the statute does require the disclosure by the arbitrator of a professional relationship of a spouse. Does it? Yes. I've got it in front of me. Unfortunately, I'd like to say the opposite because that would mean we'd win. But I don't think that would be fair or accurate. But I do think. . . Unfortunately for you, the word significant appears in front of the phrase personal relationship and does not appear in front of the word professional. Absolutely, Judge Fletcher. But it's also the case that the decision I cited says squarely and unequivocally that it has to be significant. And I submit that it absolutely would be unworkable to have a statute that said, because I once was a summer associate 30 years before, and if that's not disclosed, that somehow is going to upset an arbitration. If that's the rule, hundreds of arbitrations in this state that have been conducted by jams are going to be subject to being upset if any kind of professional relationship. And we should be concerned because jams is going to go out of business. All those cases are coming back to us. I am concerned, actually. I think you probably don't want those cases to come back to you. But I think what you would need to be concerned about, of course, are the parties that are involved. They're the ones who would really bear the brunt of this. I just want to make sure I'm clear on this. Would this relationship had to have been disclosed in the initial disclosure? I don't think so because I think that the initial disclosures also require a disclosure of a professional relationship, and it needs to be a significant one. So I don't think it needed to be disclosed even in the initial disclosures. But certainly under the more limited disclosures that are required under the Judicial Council rules after the arbitration is going on, it did not need to be disclosed. So setting aside the labor issue, which we think by itself is dispositive and that the Court doesn't need to reach anything else. What do we do with the fact that we didn't know until right now when they discovered it? Well, Your Honor, as we said in our briefs, I think it's frankly too late for them to say when they discovered it. They had an opportunity in the trial court to say. They were asked by the trial judge did they have anything else at the hearing to offer. They said nothing there. He said in our briefs they've not disclosed this. They should disclose this. They're the only people who know this information, and we cited on pages 15 and 16 of our briefs, our brief, a number of cases that say when you're the person who has the information, don't. Well, no, but my point is, and you make the point of this in your brief, that there's a very artful affidavit that says last visited and so on that doesn't say when first visited and so on. Until today, we did not know when they learned. Now, do we know simply based upon a representation or an oral argument? I mean, it's not in the record. So what am I supposed to do with that? Right. I would say first, Your Honor, they had their opportunity to do it. They didn't do it, and they lose. I'd say second, if the Court disagrees with that, then you rely on the very vague representation as to exactly when they knew, but there's no doubt they knew months and months into the proceeding, even by what they submit today, and that alone defeats them here. So either way, I submit that they lose. If the Court has nothing else, we'll be happy to submit. Thank you. Okay. You've got about a minute left. Briefly, Your Honor, there's one thing that's just plain wrong here, and that's that the ethics standards are more narrow. Standard 7D says a person who is nominated or appointed must disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt. That's exactly the same standard as under the statute, and that's exactly the language that the arbitrator quoted,  is exactly what the state legislature said has to be disclosed. That's the threshold they set. Professional relationship applies to past professional relationship? The language of the statute says a past professional relationship expressly. Yes, Your Honor. I'd also point out that it was not – you asked me when I knew. I'm not here to say when anyone else knew, but I can also say that we don't know the extent of the personal relationship. We've proven something we didn't have to uncover and had no duty to search out, that there was a professional relationship. They didn't say there wasn't a personal relationship, but I would say that would have been an easy thing to put in a declaration. They said all cases were decided by this arbitrator against us subsequently, but they didn't say the arbitrator didn't know Mr. Grossman, didn't himself have a relationship. They didn't turn around and minimize it. So he was brought into the case for a reason, and I think they got the reason. The reason was to either blow up the certification and make us start over, or to take away – or to gain an advantage in further litigation. So I think that these rules are not just to protect parties so they know whether they want the arbitrator going forward, but it's to protect the integrity of the process while it goes on, which is why the disclosure rules are just as robust and are continuing under the ethics rules. Okay, thank you. Thank you. Case, argument, and amendment. We are adjourned. Thank you.
judges: Tunheim, Kozinski, Fletcher W.